■ Patrolmen's Benevolent Association of the City of New York, Inc., et al., Respondents, v City of New York et al., Appellants. [848 NYS2d 80]—

Judgment, Supreme Court, New York County (Richard B. Lowe, III, J.), entered November 29, 2006, in favor of plaintiffs and against defendants in the amount of $524,087.71 plus interest, and dismissing defendants' counterclaim for restitution, pursuant to an order, same court and Justice, entered August 17, 2006, which, in an action for breach of a collective bargaining agreement, granted plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment, unanimously reversed, on the law, without costs, to vacate the judgment and deny plaintiffs' motion for summary judgment.

In 1998, plaintiff Patrolmen's Benevolent Association of the City of New York (PBA), as the exclusive collective bargaining representative of police officers in the New York City Police Department, and defendant City of New York (City) entered into a benefits agreement, which was renewed or extended throughout the period at issue. Pursuant to the agreement, the City would pay specified annual sums for each full-time police officer into the PBA's Health and Welfare Fund, which in turn was responsible for providing certain supplementary benefits to the police officers. In addition, the City agreed to contribute $75 per year for each full-time police officer to a separate PBA Civil Legal Representation Fund (Legal Fund).

The agreement set forth a formula to calculate the City's pro rata monthly obligations to the Welfare Fund and the Legal Fund. Specifically, section 2 (c) of the agreement stated that every 28 days the City would pay a pro rata share (28/365) of the annual amount due each police officer, reduced by 1/365 for each day an officer was on less than full pay status during that 28-day period, multiplied by the number of officers on the City's payroll.

Audits by the Police Department and City Comptroller revealed that, from April 1, 2000 to March 29, 2002, the City overpaid $524,087.71 to the Legal Fund, due to an incorrect rate of payment (i.e., a pro rata amount based on more than $75 per year); the calculations of the number of employees and

the number of days worked is not contested. The City requested a return of the funds, but the PBA refused, arguing that the agreement expressly absolved it from any obligation to return overpayments. The City withheld the disputed amount from subsequent payments to the Legal Fund, and the PBA thereafter commenced this action for breach of contract; the City counterclaimed for restitution. Both parties moved for summary judgment, on the ground that the agreement was clear and unambiguous, although they urged diametrically opposed interpretations. Specifically, the PBA asserted that the City is not entitled to any reimbursement for overpayments, for any reason, while the City maintained that the agreement merely bars recovery of overpayments based on an incorrect count of covered employees or the days that they were on full duty status. We find the pertinent provisions of the agreement to be plagued with ambiguity, requiring the denial of summary judgment to both parties.

As noted, supra, section 2 (c) of the agreement sets forth the method for calculating the City's periodic contributions to the Legal Fund. Section 2 (d) (i) states: "The City and the [PBA] agree that payment of the gross applicable amount computed as provided in section 2 (c) will constitute full and complete payment to the [PBA] for that twenty-eight (28) day cycle. The [PBA] shall have ninety (90) days from receipt of such payment to reconcile the City payroll, as defined in section 2 (c) above, with its own records, and report such errors to the City. If such errors are not reported to the City within the prescribed ninety (90) day period, the [Legal] Fund will not receive a retroactive contribution for the period prior to the time such error is reported to the City. The [Legal] Fund, however, will be required to provide the appropriate benefits to such employee(s) even if a time period exists in which the Fund did not receive City contributions." Section 2 (c) defines "City payroll" as "the list provided by the Office of Payroll Administration, or any other list accepted by the parties to this Agreement, which is used to calculate the number of covered employees for whom payment to the [Legal] Fund should be made."

Section 2 (d) (ii) of the agreement provides: "In the event that a covered employee is included on the City payroll, but the City does not submit payment on behalf of such employee, the [PBA] shall be entitled to a contribution on behalf of such employee, if the [PBA] reports such errors to the City within ninety (90) days of receipt of the payment for that twenty-eight (28) day cycle in which the omission occurred. As such, the [PBA] will not be required to return overpayments to the City, and the

City will not be required to pay to the [PBA] any underpayments, except in this referenced instance and as stated above in paragraph 2 (d) (i). The foregoing will not be construed to bar adjustments resulting from correction of errors made pursuant to section 12 of this Agreement [concerning the definition of covered employees, including the addition and deletion of covered titles]."

Section 2 (d) (i) allows the PBA 90 days to reconcile the "City payroll," defined as the number of covered employees, with its own records, and report any errors. Thus, that section contemplates a scenario in which the City's records reflect fewer employees than the PBA claims. Similarly, section 2 (d) (ii) affords the PBA 90 days to report a failure of the City to tender contribution on behalf of an employee who is listed on the City's payroll. Thus, both sections 2 (d) (i) and 2 (d) (ii) seem to concern errors in counting the number of employees.

In contrast to section 2 (d) (ii), which sets forth the condition under which the PBA "shall be entitled" to recover a specific type of underpayment, section 2 (d) (i) does not expressly grant the PBA a right of recovery, but rather states that the PBA shall be precluded from recovering a certain type of underpayment if not reported within 90 days. The phrasing of section 2 (d) (i), expressly barring recovery of underpayments in one particular circumstance, suggests that recovery of underpayments, and possibly overpayments, is otherwise available.

The PBA emphasizes the statement in section 2 (d) (ii) that "the [PBA] will not be required to return overpayments to the City, and the City will not be required to pay to the [PBA] any underpayments, except in this referenced instance and as stated above in paragraph 2 (d) (i)." That phrase can be read, as the PBA argues, as an absolute bar to the City's recovery of overpayments, since there are no express provisions for the return of overpayments in either the "referenced instance" or "paragraph 2 (d) (i)." However, if indeed that was the intent, it would have been far easier to state that under no circumstances would the City be entitled to recover any overpayments to the PBA, whatever the reason for the overpayment, rather than use such circumlocutory language. Moreover, the PBA essentially ignores the introductory clause, "as such," thereby violating the canon of contract interpretation that every clause and word should be given meaning (*see Travelers Cas. & Sur. Co. v Certain Underwriters at Lloyd's of London*, 96 NY2d 583, 594 [2001]). The clause "as such" refers to the previous sentence, and thus what follows appears to be limited by, or explanatory of, that preceding sentence. Such a construction could support the City's in-

terpretation of the provision as setting forth the sole instances for recouping overpayments or underpayments based on incorrect headcounts, but not affecting the recovery of payments based on other errors.

In addition, the next sentence of section 2 (d) (ii) states, "[t]he foregoing will not be construed to bar adjustments resulting from correction of errors made pursuant to section 12 of this Agreement [pertaining to the addition and deletion of different categories of employees]." That can be viewed as just adding one more category for which the return of overpayments or underpayments is permitted, as if the second sentence of section 2 (d) (ii) read: the PBA will not be required to return overpayments to the City, and the City will not be required to pay the PBA any underpayments, except in this referred instance, and as stated above in paragraph 2 (d) (i), and to make adjustments resulting from correction of errors made pursuant to section 12 of this agreement. However, rather than including that category of erroneous payments in the list of overpayments and underpayments that may be recovered, the agreement states that the restrictions on recoupments do not apply to the correction of errors pertaining to section 12. Although no other types of errors were expressly enumerated as surviving the restrictions on the recovery of overpayments and underpayments, it may be that, because section 12 entails issues of counting employees, the parties believed it was necessary to specify that the adjustment of errors concerning section 12 remained unaffected, but the availability of recovery for other errors would be self-evident. Indeed, the City argues that special provisions regarding errors resulting from the counting of employees and days they were on full pay status were necessary because those numbers are in constant flux, and thus miscalculations and disputes between the parties could be expected.

Section 10 of the agreement provides, in pertinent part: "Neither underpayments nor overpayments resulting from the application of sections 2 (c), 2 (d) (i) and 2 (d) (ii) shall be subject to arbitration, or any right of recovery in any other forum." The PBA reads section 10 as confirming its interpretation of sections 2 (c), 2 (d) (i) and 2 (d) (ii). However, as the City argues, underpayments and overpayments based on incorrect headcounts are not errors *"resulting from* application of sections 2 (c), 2 (d) (i) and 2 (d) (ii)" (emphasis added), and thus do not appear to be barred by section 10.

For all of the foregoing reasons, the ambiguities of the agreement do not permit a construction as a matter of law, and

therefore summary judgment must be denied both parties. Since the meaning and extent of the contract have yet to be established, we decline to address the City's arguments regarding common-law recoupment and public policy. Concur—Lippman, P.J., Andrias, Williams, Buckley and Malone, JJ.